Johnson, J.
The position laid down by the presiding judge, that a magistrate is not liable in a civil action for the consequences of an error of judgment, in a .matter oyer which he has jurisdiction," is one which will'not be coutroverted; and it is equally clear that to make him liable in such a case corruption must appear, either from the grossness of the circumstances, or be proved aliunde. It is not pretended that there is any proof on the subject; so that on reference to the iirst ground of the motion-, it will only be necessary to enquire:
1st. Whether he had jurisdiction over the subject matter? and
2nd. Whether the circumstances justify' the conclusion that he acted corruptly? •
Without entering into a minute analysis of all the.provisions of the act of 1740, (Pub. Laws, 171-2,) on which the proceedings before the defendant were founded. It will he seen at once, that all that was necessary to give the defendant, acting as a magistrate, jurisdiction over the matter, was that the horses should have been seized and brought before him, under a charge that they were kept, raised, or bred for the peculiar use and benefit of a slave; and that this state of facts did substantially exist is abundantly proved. In this state of things the act imposed it on him, as a duty, to take the oath of the person seizing them, concerning the manner of seizing and taking them, and if he is satisfied that the seizure was made according to the directions of the act, he is required to declare them forfeited, and to order them to be sold; and the only remaining question is, whether he acted with good faith in the discharge of this dufy. In general, *110 this court would regard the decision of the presiding judge, on a question of fact, arising in a case within the summary jurisdiction, as conclusive; and this itself would furnish a sufficient answer to all the objections to the regularity of the proceedings. But if we examine them with the candour and liberality due to a tribunal constituted of such materials, as these for the most part must necessarily be, we are obliged to come to the same conclusion. It is true that the oath of William Cantey, who seized the horses, is not drawn with all that technical precision which we should expect from a profound lawyer, or an experienced clerk, but it contains the most positive affirmation that the horses seized were not the property of any white person, and his confident belief that they were the property of slaves; and even admitting that it does not furnish strict legal proof of the fact, it may readily be believed, that an honest man might draw that conclusion. The same mav be said of his rejecting the evidence of Josiah Perry and Thomas W. Boone, the friends of the plaintiff, and of his -not giving notice to the plaintiff of the seizure of the horses. For although it is thought that it would have been his duty -to have heard evidence, which might have been offered when the question was before him, whether they belonged to slaves or not; yet it may well be doubted, in the first place, when after he had given the order of condemnation, he was bound to hear any evidence, but that prescribed by the act itself, viz. the oath of the owner or other person having the lawful custody. And in the second place, it is proved by plaintiff’s own witnesses that be was apprised oí those proceedings, however informal the notice might have been. The general immunity which the-law extends to magistrates in the honest exercise of their legitimate functions, is not denied; but it is contended, in support of this motion, that the powers delegated by this act is without the pale of their general authority, and that, therefore, in the exercise of it, the same protection is not extended to them. TÍiis idea is inferred from the assumption shas it is a ministerial and not a judicial *111 power. In determining this question, we must look to the act to be done. If it involves only the exercise of judgment» then it is purely judicial, and if the execution of process, then it is purely ministerial. By the act the magistrate is required to take the examination of the persons seizing the horses, and if'ke is satisfied that they are the property of slaves, it is his duty to give the order of condemnation and sale; and if this power be tested by the foregoing rule, it is the exercise of judgment alone, and therefore exclusively judicial.
Grimke* Legare and Grimhe, for appellant.
Martin and JBhnore, contra.
The second ground of the motion has been abandoned, and it is only now noticed to express the sanction' of the court to the footing on which the counsel put it. The idea doubtless originated in the supposition that the act was an infraction of that article of the constitution which secures .the right of trial by jury; and,-as between the citizen owner, and other persons, there is m> . question that an act giving to justices of the peace, the power of determining the right of property of this value would have been unconstitutional. But by the laws of this state, slaves can have no property; neither can they sue or be sued; so that as respects them the question of property can never arise; and in this view of it, the act is' a mere disposition of property which belongs to no one. Indeed the act itself seems to have avoided this difficulty by creating, in some measure, tbe owner or person having the legal pos--session of the goods the sole judge; for upon their taking the oath prescribed by the act, the magistrate is bound to restore to them, the possession of the goods.
The motion is refused.